We have three cases on the calendar this morning, in contrast to our usual mixture of business and personnel cases. We have all personnel cases, a case from the Court of Federal Claims involving a veteran, a veteran's case from the Court of Appeals for veterans' claims, and an employee case, the latter being submitted on the briefs and not being argued. So our first case is Paul Dean v. United States, 2010, 5113. Mr. Eisenberg. Your Honors, if it so pleases the Court, I believe the legal issue before us today is whether or not the lower court had jurisdiction to hear our case before an appeal from the BCMR. We assert that it does, that the issue of equitable tolling is involved, and also the issue of first accrual, the equitable tolling issue. Counsel, there seems to be some confusion, don't take me wrong, but I think in your brief, with regard, and I may be confused, with regard to the distinction between equitable tolling and first accrual, I believe those are two separate kinds of ideas. Yes, sir. That is, 2501 specifically provides for a legal tolling process if you are overseas or otherwise disabled, whatever that may mean, whereas equitable tolling is not provided for by statute, it's an equitable activity that courts engage in, and it's a separate kind of notion. Do you read it that way, or have you thought of it differently? How do you see it? And I apologize, Your Honor, I may have blurred the two, because in my thinking that obviously there is some form of tolling. Speak up a little bit. I apologize, in my thinking. That part I heard, go ahead. Okay. My thinking is that since the statute in itself does provide for tolling in specific circumstances, and that with the Supreme Court's shift, if you will, from its earlier 1886 case where there was no such thing as equitable tolling, and now seeing that there is equitable tolling, having replaced, and I apologize, I think it was discussed in Sand, and also, I forget the last two cases, Sand and the overruling of Soriano. See, that's what's puzzling me, and I had some trouble working through your brief on that, because as I read Sand and Gravel, there is no equitable tolling under 2501. Do you read it differently? I do read it differently. I read it differently in this context given Henderson v. Shinseki. We're a very conservative justice, if I recall correctly. But that's a very different issue, isn't it? Is it? I don't believe that it is. I realize that we're discussing an issue of an Article I court system completely from into the Court of Appeals for Veterans Claims from a agency action into the court system, but I think Scalia was pretty much specific when it came to saying that the veterans and the military members deserve that extra deference, if you will. I think that's a simple situation here. I think the simple workaround can be found either in the equitable tolling argument that we've been making or basically showing that the first accrual of the case didn't start until the most latest action in 2008 or even in 2003. But didn't we decide that in Bank the other way? Forgive me. I apologize. That which was the case? Are you thinking Martinez? Yeah, Martinez. We had an important dissent in that case, but nonetheless it was a dissent, and I think we decided that it wasn't when the decision of the board for correction of military records rendered its decision, but the date of discharge. I understand. And respectfully, I believe that given, I respect that this court is very strongly held to stare decisis as, of course, our legal system is based upon, but Ginsburg, in her dissent for Samuel- You're talking about Justice Ginsburg? Yes, ma'am. I'm sorry. I'm sorry, sir. Yes. And Justice Ginsburg said that stare decisis should be, is important, but it is not inflexible. And given that we are leaning more towards giving the veteran and the military member the benefit of the doubt, that extra nudge, if you will, in this process- But you know that a panel cannot overrule the Inbank Court. I understand that the panel cannot overrule the Inbank Court, but it can follow our superior court's precedent. Which precedent? Again, from Henderson. Because from Henderson- Henderson dealt with claim processing rules. Yes. That's not involved in this case. What's involved in this case, perhaps I'm misunderstanding the case. I thought what's involved in this case is section 2501, which is a statute of limitations. Everybody agrees. Do you not agree? I agree with that, Your Honor. I guess my argument is more of an analogy. The controlling law is sand and gravel, isn't it? For statute of limitation. In fact, sand and gravel is all about 2501, isn't it? Yes, it is. But sand and gravel, if I recall correctly, was dealing with an issue regarding the government waiver, not with the issue of equitable tolling in of itself. Well, again, this gets to the question that Judge Plager raised in the first instance, whether we're talking about equitable tolling or whether we're talking about the tolling provision in the third paragraph of section 2501. I think we're talking about both. Well, let's assume we disagree with you that equitable tolling doesn't apply because of the John R. Sand decision and that what we're talking about here, if anything, is the exception in the third paragraph of 2501. Yes, sir. The legal disability exception. As I understand the record, the problem here is that there's an absence of evidence to support any conclusion that there was a legal disability. Respectfully, sir, I disagree. I recognize that in 2006, the VA then identified my client as having major depressive disorder related back to his time in service. What the record also doesn't reflect is that the military actually tested him for any mental impairment at the time of his military medical discharge. And again, from what I've seen, in my personal opinion, is that the military has a tendency just to avoid the issue as a whole by not testing the individual members as they're going through this process. We assert that, one, the depression issue aside, which he had, we believe, from the records, he was never tested by the military to determine the sleep apnea issue, which, and I must add as a footnote that we just received two days ago, if you will, a sui sponte decision from the BCNR determining that he was entitled to a military medical retirement, not a discharge, for 50% for sleep apnea. That sleep apnea is well documented as causing mental disturbance from lack of ability to recognize one person's rights. None of that is relevant here if you're out because of the statute of limitations, right? No, it is relevant here because if he was suffering from a mental disability at the time, a legal disability, then section three comes into play. Weren't there fact findings that during the period in question, there was no evidence of mental disability? The appellant, Mr. Dean, had been claiming since the very beginning that he has been unable to work because of the sleep apnea issue. You're focusing on the factual context, right? Yes, sir. We have a very peculiar review statute, as you well know. Yes, sir. Unless the Court of Appeals for Veterans Affairs interpreted a statute or a regulation, if they applied the statute or regulation wrongly to your facts, we can't correct that. You agree? Understood. So the question is, did they interpret the statute? And I'm having trouble finding a jurisdictional basis for us to hear your appeal. Well, I would argue that they interpreted it incorrectly or wrongly coming from the Court of Claims, not the... I'm sorry. You're right, I'm sorry. I get confused too. Yeah. Correct me if I'm wrong. But we still defer on facts. Yeah, I'm sorry. I'm confusing you with the next case. I strike my comment. No worries. Okay. Unless they are interpreted improperly by... Unless they're interpreted incorrectly through the statute. You mean, unless they are clearly erroneous? That too. Fact findings. And it is clearly erroneous because they failed to appreciate the evidence that was there that showed that he did have a mental disability, although it was not the talisman of a mental disability, it was the sleep apnea, which miraculously the BCMR just determined, oh, yeah, he did have 50% back then. That, you know, he did have that condition concurrently evaluated and determined by the VA, I believe, going back to his date of discharge. Obviously, the VA can't go further back because he was a military member. Are there any other... I see my... Oh, maybe not. During your rebuttal time, you can use it now or save it. I'd like to save it unless there are, of course, any questions from the panel. We'll save it for you. Thank you. Mr. Grote. May it please the court. Let me correct one point. The VA determined that Mr. Dean suffered a depressive disorder effective December 12, 2005, and he was separated in 2002. There's nothing in the record at all of which I'm aware, which even suggests that he was under a disability within the meaning of 2501 at the time of his separation. Under this court's precedent, of course, the court presumes that individuals are competent, and there has to be some evidence to counter that. And as the court below found, it simply wasn't presented in this case. What we have is a complete absence of any probative evidence that he suffered a legal disability within the meaning of Section 2501 at the time of his separation. And that, of course, would only serve to—such a disability would only serve to stay the running of the statute of limitations for a period of three years after the disability ceased. Presumably, his disability continues to today. Well, in that case, he couldn't bring a cause of action unless he'd have an attorney appointed to overcome—I mean, they're real problems. The law presumes competency. There's nothing in this record at all to even suggest incompetency at the time of separation such to stay the period of limitations. And there's nothing conversely in the record to establish that the period—that any period of disability within the meaning of Section 2501 has somehow been lifted. There's simply nothing in the record. And that's the genesis of the court's decision. Getting my mind back around on the correct case, you do agree with me that there are two kinds—or do you agree with me that there are two kinds of tolling involved? Yes, there are. And this court's president has dealt with both. Equitable tolling, which I read sand and gravel as barring? Well, in sand and gravel, the court said essentially that the courts had no option but to recognize the express congressional limitation upon the Court of Federal Claims jurisdiction. And that, since equitable tolling is a court-based rule, that effectively precludes any possibility of equitable tolling. The equitable tolling involved—well, it wasn't a case of equitable tolling in John R. Sands, of course. It was the failure to raise. And the question would be whether the court under those circumstances would apply a court-made doctrine. That is, when a party doesn't raise an issue below, that issue is waived. And the court rejected that rule and said that the application of 2501 is mandatory. The effect of the court's holding in John R. Sands effectively abolishes any possibility of equitable tolling because equitable tolling is a court-made rule. Of course, as you observed under 2501, there is a statutory basis for tolling. And that actually counsels against recognition of an equitable tolling because under established principles of statutory construction, when Congress has specifically addressed the circumstances under which tolling should be applied, the court should infer that those—that specific exception is exclusive. And there's been no showing here, as the court found below, that Mr. Dean met the established standard under this court's precedent in Gowie of establishing that he was unaware of the situation which existed at the time of his separation and unaware of the need to pursue a legal remedy at that time, which essentially is, in a variety of contexts, that's the doctrine the court has applied. And Gowie's particularly instructive, of course, because in Gowie, the individual involved was actually confined in St. Elizabeth's at the time. And notwithstanding the fact that he was involuntarily confined and also had an attorney appointed to manage his affairs, the court found that he was aware of his legal rights sufficiently, that the running of limitations under 2501 was not accrued. Clarify something for me, if you would, please. Sand and gravel, with all due respect to Justice Breyer, is not one of the clearest cases I've ever had the pleasure of working through. So I'm not quite sure how to put the pieces together. As I read it, sand and gravel, in effect, says that the statute of limitations under 2501 is not an affirmative defense. That is to say, you don't need, the government doesn't need to move to bar, to raise the statute. It's implicit in any suit that's brought under the Court of Claims, Court of Federal Claims. Do you read it that way? Well, that was this Court's holding, which the Supreme Court reviewed, was essentially just that, that the courts have an obligation to recognize explicit limitations upon jurisdiction. That was this Court's holding in John R. Sand and gravel. That's Judge Breyer's decision as well, that in affirming this Court's holding. Does that mean that a petitioner who wants to go to the Court of Federal Claims has to affirmatively negative the running of the statute of limitations as an element of the cause of action? That's not what this Court held in John R. Gravel. The Court held in John R. Gravel that when the issue is raised, squarely raised, the Court has to address it. And the government, under what turned out to be an erroneous reading of the statute of limitations in John R. Gravel, didn't raise the issue. However, the underlying facts were raised. This case is distinguishable. This case is actually the same, in a way, as John R. Sand and gravel, because there's an absence of evidence here in the record as to any entitlement to staying of the limitations period. And in those circumstances, where it's squarely raised in the complaint, the Court below effectively had no choice but to dismiss it under 2501. Mr. Grote, your opponent in his little brief had asked that we hold this case pending the Henderson decision, which has now been handed down. Tell us how you think Henderson applies here. Well, it doesn't. And Henderson and John R. Sand and gravel, in a way, complement each other, because both are based on an analysis of the applicable statutes. In John R. Sand and gravel, the Supreme Court had before it the long-established precedent of the Court of Claims and this Court involving an interpretation of 2501. And the Court held principles of stare decisis dictated that it follow those rules. In Henderson, the Court was looking at what it characterized as a claim processing rule, distinguishing it from the cases of the statutes of limitation, such as 2501, and really held under those circumstances that it would held those claims processing rules do not mandatorily bar the presentation of a claim and that courts could apply equitable doctrines to find exceptions to those claims processing rules. And they were appealing to an Article I court there, rather. Well, this is an Article I court, too. Well, I'm not sure that they talked about the distinction being the statutory scheme. And the distinction they drew, I think, is that 2501 is a longstanding component of the jurisdiction of the claims court, old trial division of the Court of Claims. But longstanding statutory prohibition upon an exercise of jurisdiction. And that's what it had been interpreted with for 100 years. And in Henderson, that simply wasn't the case. They held that where there was a claim processing rule for veterans' claims in what, to a certain extent, is a non-adversarial process, they weren't going to regard this as being a mandatory processing. You would agree, perhaps, that the line between a claim processing rule and a statute of limitations is not immediately obvious to the uninitiated? Well, perhaps not to the uninitiated. But given John R. Sand and Gravel, and given Henderson, there can be no question that under the controlling precedent before this court. With regard to 2501. The line is clear. Let me shift your focus for a moment to a second part of what I understand Mr. Dean's case is. Which is, if I look at the timeline correctly, his discharge occurred in 2002. And his complaint was filed in 2009, clearly beyond the six years. He subsequently, after his discharge, however, went to the Air Force Board for the Correction and Military Records, which was denied in September 25th of 2003. If that created a separate cause of action, the decision of the Correction Board, he would be within the statute of limitations, wouldn't he? Yes, potentially. Well, the statute of limitations under the Tucker Act or the APA, yes. The answer is, depending on the cause of action, yes. The possibility exists that if this court recognized the BCNR action is somehow accruing a new cause of action for the purposes of the statute of limitations. But the problem with that theory is Martinez. Well, that's precisely the issue the court in Martinez addressed. And ultimately, the Martinez decision is merely consistent with this court's Tucker Act jurisprudence. And that is, the court looks to when the individual can assert a monetary claim. And that goes way back to Friedman in the disability cases. And looking to when a monetary claim can be asserted, the court logically determines that a cause of action accrues at that point in time. The cases that Mr. Dean cites in his brief involve review under the Administrative Procedures Act, which, of course, doesn't proceed upon the basis of Tucker Act jurisdiction. And those cases logically hold that an individual has a cause of action to contest an administrative determination. That's not the ultimate premise of the Court of Federal Claims jurisdiction in a case like this. In a case like this, the question is, the court focuses, if you would, on the monetary entitlement. And consistent with that focus of this court and the Court of Federal Claims focusing on And as Mr. Dean appears to recognize, the argument, the holding in Martinez is completely dispositive of the contention that a cause of action somehow accrued or somehow re-accrued, if you would, at the time of a BC&R denial. Martinez, of course, was an en banc seven to six in this court. So at least six judges weren't quite in your same camp, were they? But of course, under South Corporation, it constitutes. And certainly, I recognize the other actions. And the question of the parties argue about the disparity of review available under the APA versus the Tucker Act. But ultimately, this court held. And I think the thrust of the Martinez decision is, look, he has a money claim at a certain point in time.  And I'm crudely summarizing the holding of Martinez. But it follows logically, given the Court of Federal Claims jurisdiction in cases like this, that there is no cause of action at the time of the BC&R. And that's logical, in a way, because the BC&R can reconsider cases or do a whole lot of things and create, if you would, new causes of actions. There was a motion in this case to stay the proceedings pending BC&R action. And if one were to do that, logically, there could be an infinite number of causes of action as the BC&R either grants relief or doesn't grant relief over a period of time. The other side of that problem, though, is that military personnel are entitled to go to the board to get their records corrected. And it often takes a number of years for the board to get around to issuing a decision, during which time the statute of limitations on the original discharge runs. And they have no control over getting a board decision. That's precisely the point, I think, in the dissent to the Martinez decision. And one of the arguments is that service members might be misled by the availability of administrative relief to think that they don't have to bring a cause of action. Those were the issues that were considered and argued in Martinez and decided. And Martinez is the law of this. It was decided on a basis. Talking about the law of this court, Mr. Groh, in your brief, you gave us, you made a gratuitous smack at the court in your footnote on page eight with regard to the Fisher case. And if the purpose of that, which is not in any way in this case at all, and if your purpose was to irritate the court, I have to say you succeeded. Well, I'm sorry, Your Honor. That issue has been raised, that issue was raised by a panel of this court and resulted in supplemental briefing in a case by the name of McDowell. But it's not in this case. It's not in this case. And the only reason for the purpose of, if this case were ever to get subsequent review, the purpose was to preserve the issue, at least identify the issue. And in no way was that intended to, personally, I assure you, in no way was that intended to be an insult or merely a recognition that this was an argument that the government made in the past and continued to believe was correct. And I apologize if the effect was to irritate the court, that the effect was merely to identify the issue and preserve it. For the reasons set forth in the decision of the court below and in our briefing in the argument today, the court should affirm the judgment of the United States Court of Federal Claims dismissing Mr. Dean's complaint as barred by the statute of limitations. Thank you, Mr. Groh. Mr. Steinberg has a little time left to rebut. Please, thank you, Your Honor. Your Honor, I think respectfully that my opposing counsel actually kind of hit the issue, the very finite issue, on the head. Let's not forget that sand, my understanding of sand, is that there is still a rebuttal assumption for equitable tolling, period. But putting that thought aside for a second, the opposing counsel talked about how where the Congress hasn't spoken, that it should be inferred that this is how equitable tolling, or how tolling works in 2501, and it's Stan Pack. Yet, if we look at Henderson, by analogy, Henderson, Scalia says, well, Congress didn't speak here, but Congress has had a long history of preserving veterans' and military members' rights. With analysis in both situations, and I did believe I misspoke earlier, we are both in Article I arena. Claim court, this court is Article I. The veterans, excuse me, the, forgive me, the veterans court, the Court of Appeals of Veterans Claims and that whole process is all Article I as well. Given that we're not in an Article III scenario, given that we are in an Article I scenario, given that Congress has had a very long history of preserving veterans' benefits rights, and also following our Superior Court ruling from Henderson and Chinckey, especially from Justice Scalia, who is, you know, not one to be liberal. I believe that the lower court erred as a matter of law in its interpretation of whether it be legal tolling or equitable tolling, that this case should have been heard on its merits below. The other thing I, the other issue I wish to mention, and I've discussed this in my brief, excuse me, with the discussion of the Green case, which I recognize is a case outside of this court's jurisdiction. However, the notation I used from that case kind of articulates how there is a split among the circuits as to when the tolling of a BCMR action into court begins, whether it's right after the, six years after the discharge, six years after the discharge, but after a BCMR action, or six years after the last BCMR action. If the courts are split and our Superior Court is telling us, hey, we need to be looking out for the veterans' benefit, and the right of first accrual does not always have to be at the first instance of an action, as was discussed in, I apologize, I can't remember the name. It was Franconia Associates versus United States. That first accrual is not necessarily, again, as I mentioned before, when that action, quote unquote, factually first begins, i.e. the discharge. And as I mentioned earlier, I greatly respect this court's stare decisis precedent, but it need not be inflexible. In this case, we need to follow, if you will, our Superior Court, the overall intent of Congress, and be looking out for the veterans' benefit here, as we should be in all cases. Are there any questions by the panel here? Thank you, Mr. Steinberg. Case is submitted.